Yes, sir. Good morning, Your Honours. May it please the Court, I am Brian Cannon for the plaintiff, Total Recall Technologies. I would like to reserve two minutes for rebuttal, but I'll keep track of my own time if I can. Thank you very much. We're here because, Your Honours, Total Recall should have its day in court to hold Palmer Luckey and Oculus and Facebook to account for breaching a contract and taking the technology that belonged to Total Recall. The first issue I would like to address, and really the issue I want to focus my argument on today, is the standing issue, Your Honour. Defendants do not have standing to insert themselves into the internal management authority of the plaintiff partnership in this action. The plaintiff, as you know, is a Hawaii partnership that was originally formed by two inventors in Hawaii who had a great idea about commercializing a virtual reality headset. They had a partnership agreement, they filed for a patent, they obtained a patent, they worked on their technology, they invested their own money and time, and they entered into a contract with Palmer Luckey. Now, when this lawsuit began, the defendants took the partnership agreement, the internal partnership agreement, of the two partners in Hawaii and said, hey, those guys didn't agree amongst themselves. They didn't exactly agree how to pursue this lawsuit. Therefore, the partnership lacked authority, and therefore the case should be dismissed. The district court agreed with that argument, and that was improper. The defendants have no standing to take sides into an alleged intra-partner dispute between two partners who have an ongoing business and have an ongoing relationship. And the district court was actually quite open about how there is no case law and no rule that actually supports its decision. Well, what case law and rule is there that supports what you're asking the court to do? We do have a case, Your Honor, and it's from the Eastern District, Judge Coyle in Sacramento. Not a binding case? Not a binding case, Your Honor. But there is one case, and that is the case that is closest on the facts to here. And that case, in fact, cited a treatise, the Bromberg and Ribstein treatise, which says a third party, like defendants Oculus and Pomoloky, do not get to stand in the shoes of one partner. They do not get to stand in the shoes of one partner. Unless they have an interest in not having duplicative. Yes. That is the only interest a defendant might have, which is to avoid duplicative suits on the same claim. And in the case in the Eastern District, as I understand it, there was some assurance against that. There was a release that was provided by the allegedly disagreeing partners. So in the Eastern District case, there were two partners, just like we have here. And in that case, the allegedly disagreeing partner provided a release. Let me ask you more generally. Yes. Okay. Suppose somebody shows up and files a case and says, I'm for X corporation. Yes. And, you know, or the X corporation files the case. And the defense is, well, who authorized this for X corporation? And the answer is, you know, Joe Smith. Who's Joe Smith? What do you have to do with this corporation? And it turns out he has nothing to do with the corporation. Then what? Nothing? Nothing, Your Honor. The case goes ahead as if it's a case of AT&T against Jones, even though AT&T has nothing to do with that. That's exactly right, Your Honor. And it's up to the corporation to step in and say, hey, this is not our lawsuit. It's as if Facebook filed a trademark case against a defendant and didn't follow through the internal procedures to get that case going. A defendant can't say, oh, this wasn't an authorized case by Facebook. A defendant can't get into what a corporation, an internal process. And so then if it turns out that AT&T had nothing to do with it and the case goes to judgment, for example, and the non-AT&T wins, then somebody goes to try to collect against AT&T, they obviously say we had nothing to do with this, right? Well, that would be almost a fraudulent situation, Your Honor. If you had someone that came in and said, I am AT&T, and filed a case, and AT&T had no idea this was going on, and all of a sudden there was a judgment against AT&T. And there's no interest in the defendant, not sufficient interest in the defendant or the court not to be subjected to all that? Well, I think in that situation, that's a very different set of facts than we have here, and there a defendant might fairly say, hey, I'm being subjected to multiple suits on the same claim, and therefore that very small exception in Delbon and the treatise might apply. Well, it may not be a multiple suit. It's just a suit, which is not really a suit.  Well, it's a phony suit, Your Honor. And that's not what we have here, because here the partners knew about the lawsuit. The plaintiff is total recall. It's suing in its own name. It's not suing on behalf of anybody else. This is not a representative authority case. This is the plaintiff suing in its own name. If we have, if we get into your theory, we're going to have to examine the powers of the partnership. And it's an appealing argument. I'm not discarding it at all. But the partnership was, would have to be decided, the rights of the partnership would have to be decided under what law? Well, this was a Hawaii partnership between two partners based in Hawaii, and the rights that would have to be worked out. And under my theory, Your Honor, I don't think the Court has to delve into who has what rights within the partnership. That's for the partners to work out. And, in fact, they did that in Hawaii. Well, that's true. I understand that. But we have to look someplace to how partnerships are to be dealt with, and your position is it's the Hawaii law that we will look to for that. Correct, Your Honor. And, in fact, the Hawaii State Court judge who oversaw the dispute between the two partners, Judge Liu and Maui, she actually crafted a settlement to resolve the partnership. Yes. And that's when one partner left and the partnership then went ahead. Your theory, as I understand it, is that the district judge was off on the wrong foot at the beginning because he was treating the cases coming from two people instead of a partnership. Exactly, Your Honor. If we accept your position, you still are going to have, and we send it back for that, you would still have to deal with the statute of limitations issue. That's not correct, Your Honor. This case was filed in May of 2015, and under black-letter law, the filing of the complaint tolls the statute of limitations. So you would have a relation back that the partnership was the moving party at that time? Yes. In fact — And what's your best case for that under Hawaiian law? Well, the statute of limitations, we would apply California law in this case. The internal workings of the partnership is Hawaii law. We are looking at California statute of limitations law because we filed in California where defendants are located. And, Your Honor, I think we cited the California Civil Code that a case is commenced upon the filing of the complaint, and the initial plaintiff was always total recall. This was never an individual person filing the complaint. This was always the partnership filing its complaint. Now, the district court didn't take up that issue, the statute of limitations. It did not, Your Honor. So that would, if we agreed with you, that it would have to go back for the district court to take it? Exactly, Your Honor. It would have to go to the district court in the first instance because the district court was never presented with a motion on statute of limitations, the defendants never pled statute of limitations as an affirmative defense, and the district court never ruled on statute of limitations. But my understanding of the district court's ruling was that that ruling, the second ruling, was that I told you what you have to do to get rid of this other problem. Yes. You didn't do it. There isn't a ratification retroactively, in fact, and there is — was therefore not a proper suit filed when it was filed, and it wasn't exactly a limitations problem. It was simply, I mean, the third problem being, and you can't now go refiling the first suit. Is it the third part that you're contesting? Well, Your Honor, I think we're contesting — I think you basically summed up what the district court did. Although the district court did not address the statute of limitations issue whatsoever. The district court made no rulings on the statute of limitations. So if there's any discussion of the statute of limitations— But in fact, there wasn't an attempt to refile the first — to file the first suit non-pro-tunk or something. In other words, all he had before him was this settlement, which he — which purported in itself to solve the problem. Yes. And he says in itself it doesn't solve the problem. So why isn't that the end of the story? No one tried to do anything else. I mean, you're suggesting that you now could go back and file — essentially refile the case as of — either with all the time told or non-pro-tunk or something like that. Right. Well, Your Honor, I actually disagree that we would have to refile the case. This case was proper when filed in May of 2015. Well, that goes to point one. But on Judge Alsop's view, it wasn't proper when filed in May of 2015. Yes. He asked for a number of basically hoops for the partners to jump through in order to satisfy what he wanted to see. Well, he wanted to see a ratification. That's right, Your Honor. There was no ratification. Well, there was a ratification, Your Honor, because what Judge Liu did in Maui was she crafted a new corporate structure. It was quite elegant, as a matter of fact. She — she oversaw mediation over two or three days between the two partners, and the end result was one partner withdrew from the partnership. He kept a financial interest. The other partner stayed in the partnership. So the partnership as a legal entity under Hawaii law continued on. One partner withdrew. The moment he withdrew from the partnership, he no longer had any power with respect to the partnership. Only the remaining partner had power, and he ratified the lawsuit back to the beginning. The District Judge gave some specifics that you were required to do. Yes. One of them was that your firm was retained to represent these people. I didn't understand that. But he said, I want to have specifically these two people indicate that they favor the suit. Yes. And you can't do that, but your position is, I take it, that he is making a wrong request because he's dealing with individuals rather than the partnership group. Exactly. So what do we deal with — how do we deal with that when the district court says you have to do A, but if we accept your position, you really don't have to do A? Do we tell a district judge that he was wrong in making this request and to go ahead? Is that your view? Yes, Your Honor. The district court may or may not have been wrong when he made the request because after he made the request, the corporate structure changed. The partnership under Judge — The corporate structure? Well, the partnership, one partner under Judge Liu's settlement withdrew. Yes. That left only one partner that had power over the partnership. And one thing you said, I wanted to call the Court's attention to actually the words in the settlement agreement, because before the one partner withdrew, he signed on to the settlement agreement, Judge Liu's settlement agreement, and the words in the record at page 50 are, this settlement agreement is intended to and authorizes and allows EGRA through TRT to control and pursue the California lawsuit. So before the withdrawing partner withdrew, he did make clear that he was giving all of the power, all of the authorization to Total Recall and the remaining partner. Once he withdrew, he could no longer ratify anything because he was not a partner in the partnership. So that would be your response to how you are accommodating the request of the district judge? Yes, Your Honor. Okay. I understand your argument. Thank you. Did EGRA specifically ratify it back at the beginning? I'm sorry, Judge Bresnan, I missed it. Did EGRA specifically ratify it back to the beginning? Yes, he absolutely did. Where? When? He ratified it in the declaration that was submitted to the district court, I believe, in January of 2017. And after I reserve some time, I'll go and find that and get that for you in rebuttal. Okay. Thank you very much. And where in the record is that item that you just referred to that you said occurred before the Hawaii court? That is the settlement statement is at ER excerpts of record page 50. That's page 2 of the settlement agreement where it states the settlement agreement is intended to and authorizes and allows EGRA through TRT to control and pursue  Thank you.  Good morning. May it please the court, Lauren Goldman of Mayor Brown for Appaluse. Ron EGRA unilaterally brought this suit in TRT's name in order to get rich from Palmer Luckey's invention of the rift. The partnership agreement, which departed from underlying Hawaii law, TRT's partnership agreement clearly provided that both partners had to agree on any action undertaken by the partnership. Now, where would we find that in the record? I'll find it in just a minute, Your Honor. All right. Go ahead. CR 155 is the partnership agreement. Thank you. So the TRT partnership agreement departed from the underlying Hawaii law. It said both partners had to agree on any action undertaken by the partnership. And Hawaii law allows a partnership to agree from the background law that way. The last word from Seidel to EGRA before this lawsuit was filed on this subject was the following email. Again, do not take any legal action against Palmer. EGRA then went ahead and filed the suit unilaterally and he put TRT's name in the caption. This is not an issue of standing. If EGRA had sued the defendants in his own name, the defendants would have come in and they would have said, look, who are you? We don't have a contract with you. We didn't deal with you. You can't sue us. So instead, EGRA, without the consent of his partner, went ahead and filed the lawsuit and put TRT's name in the caption. That is a fraudulent suit and defendants certainly have the right to come in and say, look, you're not TRT. You can't speak for TRT because you didn't get your partner's consent and that's required under the terms of the partnership agreement. This is not a question of standing. Defendants always have the right under both Federal procedure and California substantive law to question the capacity or the authority of the plaintiff to bring the lawsuit. That's true, but it can always, it's not something that you just automatically lose. You can always take care of the modification, make a modification to meet the objection. I'm sorry, Your Honor? You can always amend or make modification in order to meet the objection. Well. Are you saying that there's no way to cure that? No, Your Honor, not at all. Okay. But there are two problems with what happened here. First of all, you can only cure until the statute of limitations runs. We cited a half a dozen cases in our brief, including this. I understand, but the statute of limitations is not before us because the justice judge hasn't ruled on it. But he did, Your Honor. Oh, did he? He did rule on the statute of limitations, Your Honor. Well, why do we have this case if the statute of limitations is run? Well, I don't know, Your Honor. We don't think it's a valid appeal. There were several problems here. What happened was this. So the lawsuit was filed in May of 2015. The plaintiffs conceded below that they knew about the basis of the claims. They said this in an interrogatory answer no later than September of 2012. The statute of limitations was three years on the fraud claims, four years on the contract claims. So the latest date to cure this problem was September of 2016. In June of 2016, the district court said. And their position in answer to Judge Wallace's question is you can't cure it after the limitation state. You cannot cure it retroactively. That's your ultimate position. That is our ultimate position. I mean, even if Judge Alsop's terms had been met, it still couldn't be cured. That is correct. There are several reasons why what Judge Alsop did was perfectly proper. One was. You seem to be saying it wasn't proper, that even if there had been a ratification by Mr. Seigel at the later period, it wouldn't have worked. Well, when Judge Alsop issued his order, it was June of 2016. At that point, the statute of limitations had run on the fraud claims, not on the contract claims. At that point, if Seigel had come back the next day and said, I ratify Quinn Emanuel as my lawyers. I agree that this suit should go forward. Maybe that would have been sufficient. We could have had litigation over whether. The theory that you just gave, it wouldn't have been sufficient, at least with the statute of limitations. Well, no, because the statute of limitations on the contract claims didn't run until three months later. By the time they entered into the settlement agreement, which purported to ratify, which didn't, and I'll get to that in a minute, why it was not sufficient. But by the time they got to the settlement agreement, they reached an agreement in principle in October of 2016. The statute of limitations on all the claims had run a month earlier. There is no case, no case where a court has told the statute of limitations for a complaint that was filed without authority. At that point, it was too late to cure. Is that what the district judge said? No. The district court said it didn't cure for other reasons. Because there were two problems with that settlement as a means of cure, and Judge Alsop went with one and not the other. Come back to me. Has the district judge specifically made a ruling on statute of limitations? He ruled that some of the statute of limitations had run on some of the claims and that he was willing to consider allowing them to move forward if they could cure it nunc pro tonc. And that's what we have before us now. It's still open issue, isn't it? No. No, Your Honor. Well, isn't it? I thought you were just telling me that he was allowing you to consider it again. He bent over backward. I'm not saying whether he bent over backward. Did he consider it and make a ruling? He considered what he said was that the statute of limitations had run on some of the claims by the time he issued his summary judgment ruling. He said that in his final order dismissing the case in January of last year, by which time the statute of limitations had run on all the claims. He said it by way of explaining why it was important for Seidel to go back and bless the lawsuit from the very beginning, which Seidel, he said, steadfastly refused to do. Just to be specific and clear, he was therefore ruling inconsistently with your position because he thought if Seidel had ratified it, it would go back to the beginning. No. What he said, not inconsistently. There are two different reasons why this settlement agreement was not sufficient. One is that it was too late. The other one is the one that Judge Alsop relied on, and he said it was too little. His position was that if it were not too little, it would not be too late. Right. Right. He didn't hold that it wasn't too late. What he held was that it was too little. Okay? He never got to the statute of limitations. We raised it. He didn't reach it. You know. So the statute of limitations is not before us, is it? Well, it is. On this appeal? It absolutely is, because we raised it. The Court can affirm on any ground. You can raise whatever you want, but if the district judge hasn't made a ruling, what do we review? But it's under the Court can affirm on any ground. We raised the statute of limitations below. He ultimately didn't reach it because he found that the settlement was inadequate to ratify, which it was for reasons that I can discuss. He's undisputed that all the statute of limitations had run because the plaintiffs agreed that they were aware of all of the conducts giving rise to this lawsuit by September of 2012. Everything had run by September of 2016. The Court can absolutely affirm on that ground, but the Court can also affirm on the very grounds that Judge Alsup adopted, which I'd like to speak to for a minute. This didn't ratify anything. It did not. Seidel consistently refused to bless the suit from the beginning. He was the only person who could do that. Judge Alsup was well within his discretion to set reasons and bases for ratification of this unauthorized lawsuit. His idea of ratification was, show me both of these people in writing that they agree. And apparently, if that happened, he was going to let the suit go forward. But that, it seems to me, brings the question that counsel was raising, that he was wrong in looking at these people as individuals. He should have looked at the partnership entity, and that's where he went astray. No, he didn't go astray at all, Your Honor, because the partnership agreement specifically required the agreement of both partners in order to sue. And what Seidel said, right before EGRA filed the suit, Seidel sent him an e-mail that said, don't bring any action against Palmer Luckey. Seidel testified in his deposition in this suit that the suit was illegal because there was a veto against EGRA at the time that prevented him from bringing the suit. Seidel defended himself in the Hawaii action that EGRA brought to try to force Seidel to agree to the suit. The suit was unauthorized. District courts, trial courts under California law, district courts under the procedure of this court, have the power to consider whether ratification of a defect in a complaint like this one, a defect of authority, a defect of capacity, can be ratified and under what conditions. That's the CLD case that we cited in our brief. Why wasn't the statement that counsel referred to from the settlement agreement I think he said it was at ER 50 page 2, that the, that Mr. Seidel had indicated that he did authorize the California suit to continue. Why is that not sufficient to be a going forward and going backward ratification? For several reasons, Your Honor. One reason is that the settlement agreement didn't actually say that. What Seidel said was he, it says Seidel understands that EGRA intends to continue to pursue the lawsuit. And Seidel agrees. T.R.T. For T.R.T. Seidel agreed that he had no individual claims related to the California lawsuit. However, this same settlement agreement at ER 77, which is the quit claim of IP rights, gave Seidel the right to pursue claims for any violation of T.R.T.'s intellectual property rights. Defendants were always, always subject to the risk of multiple suits here for a number of reasons. Where is that provision? That's at ER 77, Your Honor. But the settlement's over before that. I'm sorry? The settlement agreement only runs to page 3. Right. This is the quit claim that's attached to the settlement agreement. Okay. But in any event, there's another problem here, which is, and this is why defendants do have the right to challenge a plaintiff's capacity or authority to bring the suit. This agreement here, this contract, was not, T.R.T. was not mentioned to this contract. The contract was between Mr. Seidel and Mr. Luckey. One of the arguments that the defendants made was that this agreement actually was not made on behalf of T.R.T. The district court never reached that issue, but you can certainly envision a situation where you get to the end of the lawsuit, defendants win or lose, and then Seidel comes in and says, no, I made that agreement on my own behalf. It's my right to sue defendants in order to get these damages. That's why Rule 9a specifically gives an opposing party a right to come in and make a specific affirmant and say that the opposing party doesn't have authority to sue in the name of another, that Egrett did not have the authority to sue in T.R.T.'s name, or that the other. I mean, there are provisions in this agreement that run to T.R.T. I'm sorry, Your Honor? There are provisions in the agreement that run to T.R.T. T.R.T. and Egrett agree that Seidel shall be paid 30 percent, T.R.T. and Egrett shall sign transfer and so on. Your Honor, that's the settlement agreement. I was actually referring to the contract between Seidel and Luckey that gave – this is a breach of contract. Well, all right. So that one I'm really mystified by, and I was going to ask you that, because that doesn't mention T.R.T. Exactly. So Seidel could come in and say, this is my contract. But it seems somehow to be common ground here that I would have thought that your main defense here would be that there was no agreement with T.R.T. But that was one of the many arguments that the defendants made on the merits. The district court never had occasion to reach that issue because it found that there was no authority. The court said, look, Seidel has followed one fix. It would be a lot easier to simply look at that agreement and say that agreement is not with T.R.T. Well, but that's not the route that the district court took, Your Honor. The district court said that this was a – Did you present that? Yes, we absolutely did. The district court said in one of its opinions that I'm assuming without deciding that this agreement was made on behalf of T.R.T. So this is not like the Delbon case. This settlement agreement between Egrett and Seidel, that's exactly the finding that the district court made, Your Honor. And this is why under that CLD case that was cited in our briefs, the district court correctly invoked its discretion not to approve this ratification, in addition to being after the statute of limitations. This agreement ratified nothing. What the district court said was it was a smoke-and-mirrors workaround that was designed to let Seidel avoid ratifying anything and sit back and then get 30 percent of the take in any – I don't understand exactly what's wrong with that. It just seemed to me that your complaint about that and your complaint about his cooperation didn't sit very well. I don't see what's wrong with any of that. What's wrong with that is that while this agreement may have settled things between Seidel and Egrett, it did not – it was incredibly coercive, collusive, and prejudicial to defendants. That agreement let Seidel get indemnified for freezing costs, take all of T.R.T.'s assets, leaving T.R.T. a judgment-proof shell, and get 30 percent of the take in any lawsuit. And he was not permitted to communicate with or cooperate with defense counsel. He was prevented from talking to us. He was the one who had dealt with Luckey, and we weren't allowed to talk to him. Is that unusual? Is that unusual? A settlement agreement? I mean, what – I.E. to have an agreement with somebody that you're not going to talk to them, you're going to talk to me? The point is that the district court had the discretion to look at all that and say, in addition to being too late, this is too little. This did not adequately or fairly ratify this lawsuit. He said, Seidel, this – it is undisputed. The following things are totally undisputed, okay? Hawaii law governs the construction of the partnership agreement. The partnership agreement requires the agreement of both partners for any action undertaken by the partnership. Seidel's last word to EGRA before EGRA filed the suit was, don't sue Palmer. So EGRA did not have Seidel's consent to bring this lawsuit. It's undisputed that the statute of limitations had run by the time that they entered into this settlement agreement, and it's undisputed that the district court found in his discretion that, as a matter of equity and justice, this settlement agreement didn't accomplish ratification. So EGRA never had the authority to bring this lawsuit and put TRT's name in the caption. The district court found that he did not. It's a matter of form. This is not one person suing on behalf of one person suing. It's the partnership suing. That's what it says in the caption. But as Judge Bresom pointed out, there's nothing to stop me from filing a lawsuit that says United States v. EGRA. I'm a taxpayer, but that doesn't mean I get to speak for the United States. I understand. I understand your position. But from a position of just procedure, it is the partnership that is the plaintiff in the case, right?  Nominally. But in DiSaraccio, the — Okay. So you have ways of attacking that. But the position that your opposition is going to say, yes, but we have a right to cure any problems. And they will say, we cured that problem by the partnership among the partners making a decision, which now makes the partnership a valid party. Correct. That's what they're going to argue. And that's — And why would you say that's wrong? For two reasons. One, because the settlement agreement didn't accomplish that, as Judge Alsup specifically found. And two, because the settlement agreement was too late. Wait a minute. You said he specifically found. That was his statement mere smoke and mirrors? Smoke and mirrors. This is a smoke and mirrors workaround. Seidel never — the district court knew all along that something very funny was going on here. He said Seidel has followed one fixed star to refuse to give any blessing whatsoever to this lawsuit. And yet the settlement agreement indemnifies him for fees and costs, gives him a 30 percent take — Of course. — and constrains his ability to cooperate with the defendant. But that's — Presumably for his agreement to get out of there and not stand in the way of the lawsuit anymore. Well, he — but he also took with him all of TRT's assets and all of its IP rights and, under the quit claim, the ability to continue to sue for any violation of those IP rights. So the district court was perfectly proper in holding that not only did this not satisfy his conditions, it didn't satisfy any reasonable meaning of any reasonable requirement for ratification. Exceptionally, and then you are over your time. Why, at the point at which Seidel is out of the partnership and EGRA is the only person in the partnership, can't EGRA act on behalf of the partnership, including ratification, back to the beginning? Because it was too late, Your Honor, because it was October of 2016. Well, I understand that, but that's not the reason Judge Alsop came, as you told me. So therefore, we — in order to affirm you, we have to get to the limitations question. Well, not necessarily, Your Honor. Yes, you can affirm on any grounds, and the facts underlying — But that's why I need you to answer this question. Okay. Because you are not defending Judge Alsop's view that EGRA could not, once he is the sole partner, ratify on behalf of the partnership. You're saying you're not defending that position. I am defending that view, Your Honor. Well, then why? That's defending.  I'm making two arguments. All right. But I want to hear the argument. Why couldn't he do that? Why couldn't he do that? Because the district court found that Seidel didn't bless the lawsuit and didn't truly — he neither blessed the lawsuit nor walked away. The question is, why did he have to bless the lawsuit? I'm trying to understand what is wrong with what they tried to do. Because he found — Just a minute. I'm sorry, Your Honor. Obviously, the judge who put a lot of effort into this settlement, and she presumably thought the following, and they presumably thought the following, that once there is only one partner, that partner can act on behalf of the lawsuit. I understand it's not what Judge Alsop originally proposed. But what is wrong with it in terms of a way of ratifying the lawsuit, if the lawsuit is ratifiable? Well, what Judge Alsop found was two things. One, that it didn't cure the prejudice to defendants for having to litigate against an unauthorized lawsuit for several years. But it's now an authorized lawsuit, if it is. Okay. And the other was that the agreement was collusive and problematic, and therefore didn't accomplish what CLD says, the California case, one of the California cases that we cited in our brief. It said that ratification is within the discretion of the trial court. Lack of capacity or authority is a defect that may be corrected on such terms as are just in the sound discretion of the court. That the court retains authority to dismiss an action if the defect is not fixed within reasonable time, and that such a defect is remediable only where it can readily and easily be cured without prejudice to either its opponents or the court. That's CLD construction, 120 Calapforth at 1150 to 1152. Okay. So now can I just address the statute of limitations very quickly, Your Honor? And I just want to explain why there's no need to remand here. Well, wait a minute. You may want to hear her question on this issue because we won't get to the statute of limitations. Fair enough, Your Honor. I'm sorry, I didn't realize that you had a question. No, I don't. But I understand your point. Okay. Do you want to say something about the limitations? I do. Sit down. Thank you. There is not a single case out there anywhere, they have not cited one, we have not found one, that permits ratification of an unauthorized lawsuit after the statute of limitations has run. The facts here underlying the statute of limitations defense, which we raised at the earliest appropriate time after they tried to ratify after the statute of limitations had run. That was when this defense accrued. What all of the California cases and the cases from this Court say is that this is a defect that can be corrected until the statute of limitations runs. But there are cases, the cases that do allow this are, what, corporate lapse cases? No, absolutely not, Your Honor. We cited six cases in our briefs. They all have different facts. The doctrine has been applied in the corporate tax context where a corporation loses its powers for failure to pay taxes. That's what I just said. That's correct, Your Honor. I'm saying those are some of the cases. That's like the VMT case. That's what I said. You said no. But this Court said it in Ray Rathen, which was a trust case that had nothing to do with corporations or taxes. In Rathen, a trustee sued on behalf of the trust. The defendant said you didn't have the authority to bring this suit without the consent of your co-trustee. And the Court said that it was proper for the defendant to make this challenge at the time when it did, under Rule 9a, which squarely addresses this, because the plaintiff could have cured the problem, cured the defect before the statute of limitations ran. Rule 9a, their position is that Rule 9a doesn't squarely address this because it only deals with authority to appear in a representative capacity. Well, that's incorrect for a variety of other reasons, Your Honor. That's incorrect for two reasons. It's what Rule 9 says. Rule 9 does say that a party can challenge the opposing party's authority to bring this suit in a representative capacity. Our argument, of course, is that EGRA did bring this suit in a representative capacity, that he brought it without Seidel's consent. I thought it was the partnership that was listed as the plaintiff. There's, Your Honor, there's nothing in the world to stop anybody from filing a suit in the name of somebody else. You said that. You said that. What we're saying is that Ron EGRA filed this lawsuit and put TOT's name on it. I'm challenging that, but it's not covered by Rule 9. That's your interpretation of it. But in fact, it says it doesn't say that in the caption. But it also allows you to challenge somebody's capacity. So the other way to look at this is to say that TRT didn't have capacity to file a suit without the consent of both partners. Okay. You are way over your time. Understood, Your Honor. Thank you very much for a very helpful argument. Yes, sir. We'll give you about 5 minutes. Thank you, Your Honors. I just want to initially loop back to Judge Berg's question, where in the record was the ratification from Ron EGRA, the remaining partner. That is at excerpt of record page 82, paragraph 8. This is the declaration of Ron EGRA that he executed after the Hawaii settlement agreement by Judge Liu in Hawaii. And at paragraph 8, he states, I quote, by the law firm of Quinn Emanuel, which is the condition that the judge also asked for. So the exact condition was satisfied by the partner. Where is that? Yes, that is ER 82 at paragraph 8. And that is the 2017 declaration of Ron Egret. I thought that's the Ron Egret. Oh. Yes. How is that? So that's where Egret is ratifying it, but Seidel is not ratifying it. That's right. And so Judge Berg had asked at the end where was that. I see. I got it. Okay. So Mr. Seidel could not ratify at that point because when he settled the agreement, when Judge Lew crafted this settlement, as Judge Wallace and Judge Berg has already pointed out, he was out of the partnership. He had no power to ratify. And, in fact, the only entity that should be asked to ratify is the partnership because that is the only party on the left-hand side of the V. The plaintiff is total recall. There is no individual party. Now, the representation is that there were other. The problem is that the, without Seidel's ratification, there, you still have problems hanging on with regard to his ability to come back again because he has, there's some attachment, which I can't find, in which he preserves his right to pursue intellectual property rights. Right. So, Your Honor, I would like to address that because that is a pretty significant misdirection, I would say, by counsel. What this settlement is, is the lawsuit, which is an asset of the partnership, remains with the partnership with TRT. And then, as I quoted earlier on page 50, the settlement agreement is intended to and authorizes and allows EGRA through TRT to pursue the California lawsuit. TRT had additional assets, the primary one being a patent, an issued United States patent. As part of the settlement agreement, that patent and related IP was transferred to Mr. Seidel. So, Seidel owns a patent, which he can, if he wanted to, assert. That is a very different, that is not the same claim as the breach of contract claim. That would be a patent claim. So, there may be other claims against Facebook and Oculus and Pamelaki, but they are not the breach of contract claims that are subject to this California lawsuit. Judge. Kagan. Just because I've been curious since I first looked at this case. Yes. The agreement between, was between Luckey and Seidel. I don't, it wasn't between the partnership and Seidel. Well, it was, Mr. Seidel was an agent of the partnership at that point when he made that agreement. Well, it doesn't say that. It's not in the name of the partnership. It's not on the face, and Mr. Seidel is not a lawyer. They don't have a giant in-house legal department like Facebook and Oculus do. So, maybe he could have written the contract differently, but there's testimony that came out during discovery that this contract was for Total Recall. Mr. Ygra put up the money for Total Recall, as in Mr. Seidel. Mr. Ygra transferred money to Pamelaki for the parts to build the head-mounted display. So, we believe that the contract with Pamelaki was on behalf of Total Recall. Although, as Your Honors point out, that issue was not addressed by the district court. The other side has certainly pled that, but it was never the subject of a summary judgment motion, and that should go to trial. The Judge Ossoff is one of our finest district judges. No one doubts that. He's a capable, bright, hardworking judge. But he was a little less than precise when he identified what he thought this settlement agreement was as smoke and mirrors. If that was a finding of fact, then doesn't that indicate that whatever was done in the case was a fraud? Absolutely not, Your Honor. And I would strongly disagree that he made any findings in that regard. What his finding was, and he can't make fact findings because it's summary judgment. This is all at the summary judgment stage. He ruled that the conditions that he set to proceed with the case were not met. He did not rule that the settlement was a fraud. He did not say that Judge Liu had overseen a fraudulent settlement or anything like that. There was no finding, no concession. That issue was not addressed by the judge. The judge simply ruled, I asked for two declarations from these two partners. They didn't give it to me. Case dismissed. And your response to that would be that as a matter of law, that's incorrect. That's correct. Except for the following. He essentially dismissed the case the first time with the conditions, the conditions where you do X and Y. Yes. You didn't do X and Y. Could he therefore just dismiss it for that reason? No, Your Honor. One, I feel he went beyond the powers of a court to say you have to do these things in order to continue with the case. But putting that aside, the plaintiff could not do what he asked because of the settlement agreement, which changed the nature of the partnership. To some degree, we have given Judge Alsup and Judge Liu has given Judge Alsup more than he asked because there are no longer two partners who may or may not have disputes about the strategy of the case and the trial strategy. Now there is simply one partner in charge who has full authority. Well, couldn't he have just dismissed it the first time? I'm sorry? Couldn't he have just dismissed it the first time? Goodbye, you're gone. I understand you're contesting it, but in terms of if he had not put this condition  Well, Your Honor, I think that goes to my very first point, that defendants do lack standing to insert themselves into this contract. I know. But I'm asking you if that's not true and he had the authority to decide what he decided the first time. I don't believe he had the authority to do that. To decide what he decided. To dismiss. I understand you think that. Correct. But if he did, didn't he have the authority to do it without giving the opportunity for any kind of ratification? No, he did not. Because the other side didn't move for ratification. Ratification was something the judge came up with by himself. That's correct. So he could have not come up with it. But I think then we would have, if the judge thought that defendants are allowed to step into the shoes of one partner and if the judge believed that that should result in dismissal, I think a party ought to be able to cure that and ratify, you know, have the partnership ratify the actions, which is what ended up happening. All right. Can I make one final point, Your Honor? You're even over your overtime, but okay. Go quickly. There was a little confusion about statute of limitations. I want to be absolutely clear. Judge Alsup did not address that explicitly or implicitly in any order. That issue was never before him and he never ruled on it. It's not in any of his orders. It's not a limitations issue as such. It's an issue about whether the ratification should be allowed or disallowed because it would be futile because of a limitations problem. Right. I understood counsel at one point in response to Judge Wallace's questions to say that Judge Alsup did address it and he did not. All right. Thank you both for an interesting and complicated argument. Thank you, Your Honor. We will submit Total Recall Technologies v. Palmer Luckey and Oculus and take a short break. Thank you.
judges: Wallace, Berzon, Berg